**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JALAL SHEHADEH,<br><br>*Plaintiff,*<br><br>v.<br><br>MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*<br><br>*Defendant.* | **CASE NO. 2:26-cv-12715 (BRM/LDW)** |

**REPLY MEMORANDUM IN SUPPORT OF FED. R. CRIM. P. 41(g) MOTION TO RETURN PROPERTY**

On September 26, 2026, Plaintiff submitted a motion under Federal Rule of Criminal Procedure 41(g), for return of his smartphone and any data extracted therefrom, seized by Customs and Border Protection (CBP) officers at Newark International Airport nine (9) days earlier on September 17, 2026. See Motion and Memorandum in Support, ECF No. 1, 1-2. The Government now argues that, having returned the physical phone, the issue is moot. Not so. The physical phone is of little importance as compared to Mr. Shehadeh's private data and his confidential attorney-client protected records. Considering the threadbare averments in the declaration filed with Defendant's response, as well as the state that Plaintiff's phone was in upon receipt on October 8, 2026, Plaintiff believes that his data has been accessed and likely retained by other Government agencies, possibly even foreign agencies, and that his phone was in fact connected to another device and tampered with.

On October 6, 2026, the date Defendant was required to respond to this motion, Defendant's counsel conveyed that his office was communicating with CBP for possible return of the phone. Plaintiff received his phone on October 8, 2026, three weeks after it was initially seized. Upon receipt, Plaintiff found his phone battery was charged, indicating that during the three weeks it had been in the Government's possession, steps had been taken to charge the battery for unknown reasons. This also suggests that the phone had to be in contact or directly connected to some other device at some point, as to charge a phone one must in general plug it in. Further, Plaintiff's phone had a sticker on the inside camera, which could only happen as a result of unfolding this particular model of phone. The phone was not simply seized and untouched for three weeks; it was tampered with in some unknown capacity.

As explained previously in Plaintiff's moving papers, his concern is not only the wrongful seizure and continued retention of his phone, but the possibility that data was unlawfully harvested from it or surveillance technology embedded within it. *Id. See* Transcript of Motion Hearing, *Blumenthal v. Mullin*, No. 1:26-mc-16 (E.D. Va. July 29, 2026), ECF No. 18 (following return of Plaintiff's phones pursuant to Rule 41(g) motion, ordering limited discovery into what had happened with them while in the government's possession); *Richman v. United States*, 350 F.R.D. 401, 410 (D.D.C. 2025) (observing that the advisory notes to Fed. R. Crim. P. 41(g) state that "[i]n some circumstances … equitable considerations might justify an order requiring the Government to return or destroy all copies of records that it has seized.").

The matter is not resolved with the physical return of the phone. Of course officers were never interested in the phone itself. The entire purpose of the seizure was to access the information stored on the phone—despite Plaintiff's repeated protest that such a search was unlawful and would divulge privileged and confidential information related to his law practice.

In his response, Defendant contends that the matter is moot because a sworn declaration, submitted by Supervisory Customs and Border Protection (CBP) Officer William Comerford, simply states that the phone was returned. *See* Declaration, ECF 10-1 ¶ 3, 4; *see also* Opposition to Motion to Return Property, ECF 10 at 2. Officer Comerford further avers that "CBP did not extract or retain any data from Plaintiff's cellphone." Declaration, ECF 10-1 ¶ 6. This is an extremely narrow averment which does not resolve the issue. Perhaps CBP itself did not extract or retain data from Plaintiff's cellphone, however, CPB did not certify that the phone remained in their sole physical custody. CPB did not certify that the phone was not tampered with and that no data was removed. Rather, they only declared that if it happened, CPB didn't do it.

Initially, it is Defendant's burden to establish mootness. Officer Comerford's declaration does not resolve the issue; rather, it creates a factual dispute as to whether there remains a controversy under Rule 41(g). It does not eliminate the necessity of a judicial determination on the evidence.

Recently, in a very similar case in which the CBP officer submitted a similar declaration, *Blumenthal v. Mullin*, No. 1:26-mc-16 (E.D. Va. filed July 16, 2026), Judge Leonie Brinkema questioned the sufficiency of the record "to satisfy a neutral…that, in fact, no information was obtained from those phones." *See* Transcript of Motion Hearing at 5, *Blumenthal v. Mullin*, No. 1:26-mc-16 (E.D. Va. July 29, 2026), ECF No. 18. Judge Brinkema was "concerned" because of the plaintiff's identity as an outspoken critic of the administration, particularly because "there's been so much…in the ether about attempts by the government to intrude upon a reporter's right to report," and the week-long detention of his two phones, which she described as something she and most people would be "uncomfortable with." *Id.* at 5-7. Before considering mootness, Judge Brinkema required a better evidentiary record to detail "what was done with these phones," "how

many people handled them," and the "basis upon which declarant [was] able to make that statement that he [] made." *Id.* at 8. For example, Judge Brinkema wanted to know if declarant interviewed people, if "he kept the phone the whole time" and what he tried to do while holding on to Defendants phone. *Id.* at 9.

In *United States v. Albinson*, 356 F.3d 278, 284 (3d Cir. 2004), the court observed that Rule 41(g) requires the court to "receive evidence on any factual issue necessary to decide the motion." (quoting Fed. R. Crim P. 41(g)). And if there is a factual dispute "relating to the status of the property or what happened to it," then the court should hold an evidentiary hearing to determine the chain of custody." *Id.*

Officer Comerford's threadbare declaration raises several questions about the basis of his knowledge. More importantly, it does not preclude the possibility that data was unlawfully extracted from his phones. Comerford is a supervisory officer, which indicates he did not perform the search himself. While he claims familiarity with the facts, he does not attest to personal knowledge related to Plaintiff's phone and what was done with it from September 17, 2026 to October 6, 2026, the date he states the phone was mailed back. He does not identify the officers who actually handled the phone or state that he spoke to them or knows who they are. He offers no property logs or written reports documenting what happened with the phone for the several weeks during which it was in CBP's possession. He does not explain why the phone was charged. He fails to explain what forensic tools or techniques were employed to recover data; whether forensic images were created or photographs taken; whether any technology was implanted to provide for ongoing surveillance, access to information, or transmission of location data; or what records document any such efforts.

While Officer Comerford states that Plaintiff's phone was seized pursuant to CBP's border search authority, he does not claim that the seizure and any search complied with CBP's own Directive No. 3340-049B. *See* U.S. Customs & Border Prot., CBP Directive No. 3340-049B*, Border Search of Electronic Devices* (Jan. 1, 2026), https://www.cbp.gov/sites/default/files/2026-01/cbp_directive_3340-049b_jan_2026_508.pdf.[1] Plaintiff does not know whether a filter team was used to protect privileged communication, if technical assistance or subject matter expertise was sought, or if information has been retained by other agencies, including "foreign law enforcement agencies," perhaps in broad, misplaced compliance with Presidential directives. *Id.* Plaintiff has reason to be concerned, particularly considering one of the few details in Officer Comerford's Declaration: that Plaintiff "arrived…from Palestine." Plaintiff's flight was from Tel Aviv, Israel to Newark, New Jersey. Because the Government does not typically refer to Israel as Palestine, Plaintiff, who is a prominent Palestinian-American lawyer, considers it meaningful that CBP explicitly stated he was arriving from "Palestine." See Declaration, ECF 10-1 ¶ 2.

Plaintiff represents clients disfavored by the administration and who oppose the government of Israel. Plaintiff's wife, with whom Plaintiff runs a law office, recently made waves with her ethics complaint against a federal judge for his anti-Palestinian statements and publicity of his pro-Israel book from chambers. Plaintiff believes that his phone was seized to chill the work performed by him and his wife, especially considering he travels internationally with some frequency, including to Palestine, but had never been subjected to this sort of treatment prior to the filing of his wife's complaint. Plaintiff does not believe he was randomly

---

[1] Plaintiff is not conceding that this Directive is lawful—to the contrary, it abrogates the Fourth Amendment, but that is not the question here.

stopped as some neutral security method of CBP, a claim that is inconsistent with being held for four hours, forced to miss a connecting flight, and having a phone seized until he took legal action to get it back.

This bears hallmarks of the Plaintiff's claim in Blumenthal, in which he provided evidence that, as a journalist critical of the Administration and particularly its foreign policy towards Israel, he had been targeted for an unlawful phone search and seizure on his return from Iran. Indeed, the judge there noted that may have been the case. *See* Transcript of Motion Hearing at 5-6, *Blumenthal v. Mullin*, No. 1:26-mc-16 (E.D. Va. July 29, 2026), ECF No. 18 ("I think given the fact that this plaintiff is a reporter, this case has particular concern to the Court because there's been so much recently in the ether about attempts by the government to intrude upon a reporter's right to report. And, you know, just recently in New York we had the issue of the subpoenas that were issued to the New York Times reporters. I don't think that can be overlooked in this context.").

All in all, the Defendant's declaration is perfunctory and raises more questions than it answers. Therefore, to gain a full understanding of what information the Government might have, Plaintiff needs additional information.

At a minimum, Plaintiff is entitled to review custody records, forensic examination reports, property custody reports, audit logs showing attempted access, and any evidence demonstrating the creation of backups or duplicates. He is also entitled to question Officer Comerford to elucidate what technology was used to attempt forensic extraction of his phone, whether any images of the devices were created, and the identities of all parties afforded access to the phones. The responses to these queries are all crucial to ensuring the government does not actually still maintain access to the contents of Plaintiff's phone and is not using his phones to

surveil him. Accordingly, this information is all the appropriate subject of a Rule 41(g) hearing. *See Albinson*, 356 F.3d at 282 ("affidavits or documentary evidence, such as chain of custody records, may be sufficient to support a fact finder's determination.").

"*Chambers* also makes clear that 'the government must do more than state, without documentary support, that it no longer possesses the property at issue.' That standard was not satisfied here. Moreover, even if the District Court properly determined the government no longer possessed the property, it did not address the remainder of the *Chambers* inquiry regarding 'what happened to the property.' A district court may be able to make these determinations based upon affidavits or verified documentary evidence. But if there are disputed issues of fact relating to the status of the property or what happened to it, the district court should hold an evidentiary hearing." *Albinson*, 356 F.3d at 284. We hope that the Government can submit sufficient information to avoid an evidentiary hearing, but as of today Mr. Shehadeh has no idea what happened to his property, including his clients' data, and that does not meet the requirements set out in 41(g).

**CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant's argument that his Rule 41(g) motion is moot; require production of the relevant chain-of-custody and forensic records insofar as they exist; and conduct the evidentiary hearing contemplated by Rule 41(g).

Respectfully submitted,

/s/Christina John
Christina John,* NJ Bar No. 379242021
Jenin Younes (*pro hac vice pending*)
AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE
910 17th Street NW

Washington, DC 20006
christina@adc.org
*Designated Counsel for Service

*Attorneys for Plaintiff*